UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:18-CV-129-TBR

LEONARD STEIN, Individually and on
Behalf of All Others Similarly Situated                                                    PLAINTIFF

v.

ALMOST FAMILY, INC., et al.,                                                            DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Plaintiff Leonard Stein, ("Plaintiff"), to preliminarily enjoin the stockholder vote on the proposed acquisition, ("Proposed Merger"), of Almost Family, Inc. by a subsidiary of LHC Group, Inc. [DN 3.] Defendants have responded,[1] [DN 48], and Plaintiff has replied. [DN 51.] Further, a hearing was conducted in this matter on March 19, 2018.[2] This matter is ripe for adjudication and, for the following reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion [DN 3] is **DENIED.**

**I. Background**

**A.**

"Almost Family is a provider of home health nursing, rehabilitation and personal care services, with over 340 locations in 26 states." [DN 1, at 7.] On November 15, 2017, the Board of Directors for Almost Family "caused the Company to enter into an agreement and plan of merger…with a subsidiary of LHC Group, Inc. ("LHC"). Pursuant to [its] terms…, [Almost Family's] shareholders will receive 0.9150 shares of LHC common stock for each share of Almost Family they own." [DN 4, at 7.] According to Plaintiff's Complaint, this "represent[s]

---

[1] Almost Family, Inc., William B. Yarmuth, Steven Bing, Donald McClinton, Tyree Wilburn, Jonathan Goldberg, Earl Reed, Henry Altman, and Clifford Holtz are all of the named Defendants in this action, and the term "Defendants" will be used throughout this Opinion to refer to all of these individuals collectively.
[2] *See* DN 54; an official transcript of the hearing was taken, and is docketed at DN 53.

1

approximately $2.4 billion in implied transaction value." [DN 1, at 2.] Pursuant to a press release laid out in Plaintiff's Complaint, "[u]pon closing of the transaction, LHC…shareholders will own 58.5% and Almost Family shareholders will own 41.5% of the combined company," and the "combined company will continue to trade on NASDAQ under the ticker symbol, 'LHCG.'" [*Id.* at 7-8.] In their Response to the instant Motion, Defendants contend that the transaction will "represent[] a premium of 15.6% to Almost Family stockholders." [DN 48, at 8.]

"On December 21, 2017, in order to convince Almost Family shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a…Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC")…." [DN 1, at 2.] In his Complaint, Plaintiff alleges that the Registration Statement was "materially incomplete and misleading," and that it therefore violated Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Securities Exchange Act"). [*Id.* at 1-2.] It is further Plaintiff's contention that "[t]he materially incomplete and misleading S-4 independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act." [*Id.* at 2.]

According to Plaintiff, "[t]he Merger Consideration appears inadequate in light of…[Almost Family's] recent financial performance and prospects for future growth." [*Id.* at 8-9.] As an example, Plaintiff notes that Almost Family "has reported positive sales growth since 2013 and positive gross income growth since 2014, with double-digit gross income growth in 2016…." [*Id.* at 9.] Additionally, Almost Family's Earnings Before Interest, Taxes, Depreciation, and Amortization, ("EBITDA"), "has increased by double-digits since 2014." [*Id.*] In Plaintiff's view, then, "Almost Family is well-positioned for financial growth, and…the Merger Consideration fails to adequately compensate…[Almost Family's] shareholders." [*Id.*]

**B.**

"A Form S-4 is a Registration Statement filed with the SEC when a company is issuing shares of its stock in connection with a business combination transaction, such as an acquisition or a merger." *In re World Access, Inc.*, 310 F. Supp.2d 1281, 1294 n.7 (N.D. Ga. 2004). The Form S-4 "combines the disclosure requirements applicable to registrations under the Securities Act of 1933 with the requirements applicable to proxy statements of information statements under the Securities Exchange Act." 69 Am. Jur. 2d *Securities Regulation* § 263 (2018). As explained in American Jurisprudence *Securities Regulation*, "[t]he types of transactions to which SEC Form S-4 relate include those generally requiring shareholder action at the corporate level. In these types of transactions, a decision is required to be made on what is in substance a new investment, *i.e.*, whether to accept a new or different security in exchange for existing securities held by shareholders." *Id.*[3]

"On December 21, 2017, the Defendants caused the S-4 [in question] to be filed with the SEC in connection with the Proposed Merger." [DN 1, at 9.] According to Plaintiff, "[t]he S-4 solicits [Almost Family's] shareholders to vote in favor of the Proposed Merger." However, Plaintiff alleges that "the S-4 misrepresents and/or omits material information that is necessary for [Almost Family's] shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the [Securities] Exchange Act." [*Id.*] At base, Plaintiff argues that "[t]he S-4 fails to provide material information concerning [Almost Family's] financial projections, which [he contends] were

---

[3] The Form S-4 itself requires specific information and numbers from both parties to the merger or acquisition. This includes the following: risk factors, ratio of earnings to fixed charges, the actual terms of the transaction, certain pro forma financial information, any material contracts with the company being acquired, the interests of named experts and counsel, certain information concerning any S-3 registrants, voting and management information, and certain optional information concerning the indemnification of directors and officers, exhibits and financial statement schedules. *See* sec.gov/files/forms-4.pdf.

developed by the company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger," and that the S-4 "also fails to provide material information concerning LHC's financial projections which were distributed by Almost Family's management to its shareholders in connection with the Proposed Merger." [*Id.* at 9-10.] "These financial projections were relied upon by [Almost Family's] financial advisor, Guggenheim, in rendering its fairness opinion." [*Id.* at 10.]

In his three-count Complaint, filed January 23, 2018, Plaintiff alleges claims of (1) violations of Section 14(a) of the Securities Exchange Act and 17 C.F.R. § 244.100 against all Defendants; (2) violations of Section 14(a) of the Securities Exchange Act and Rule 14a-9 against all Defendants; and (3) violations of Section 20(a) of the Securities Exchange Act against all Defendants individually. [*See generally id.*] By way of relief, Plaintiff seeks the certification of this matter as a class action with Plaintiff himself as Class Representative, an injunction preventing the shareholder vote on the Proposed Merger of Almost Family and LHC unless adequate information is disclosed, an accounting to Plaintiff and to his proposed class, an award of costs and disbursements to Plaintiff including attorney fees, and any other relief this Court would deem to be proper. [*Id.* at 22-23.]

## C.

As a final piece of background information, the Court makes note of the fact that, in the instant Motion for Preliminary Injunction, the memorandum in support thereof, the Response, and the Reply, there are inconsistent references to the "Registration Statement," as well as the "Definitive Proxy." These, of course, are separate documents. As Almost Family notes in its Response, "Plaintiff claims that 'the Amended Registration Statement did not address the disclosure violations which are the basis for this Motion for Preliminary Injunction' and

apparently has chosen to refer to all of these filings simply as the 'Registration Statement.'" [DN 48, at 9 n.2 (quoting DN 4, at 7 n.1).] Thus, Almost Family used the term "Registration Statement" "in reference to the definitive proxy" in its Response. [*Id.*] Thereafter, in the Reply, Plaintiff makes specific references to the "Proxy" as the Definitive Proxy, "filed by Defendants on February 13, 2018," [DN 51, at 7 n.6], as well as to the Registration Statement. Irrespective of these inconsistencies, the substantive arguments from both sides are clear. For the sake of clarity though, the Court will refer to the documents collectively as the Registration Documents, and will differentiate between the two documents where necessary.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In reaching a decision as to whether a preliminary injunction should be granted, there are four factors of particular import: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Int'l Longshoremen's Ass'n, AFL-CIO, Loc. Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The Court examines each factor separately and balances them, "mak[ing] specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Id.*

In examining the first two factors, the Sixth Circuit has held that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant[] will suffer absent the stay." *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Michigan Coal. of*

*Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Notably though, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### III. Discussion

The impetus of Plaintiff's claim is that (1) the Registration Documents omit information required by Regulation G to be included, and (2) that the Registration Documents omit "material" information, as that term is defined and explained by the Supreme Court in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976). [*See generally* DN 4.] According to Plaintiff, such material omissions manifest themselves in two key places in the Registration Documents: (1) Almost Family's financial projections, and (2) the financial analysis performed by Almost Family's financial advisor, Guggenheim. [*Id.*]

With respect to the alleged omission in Almost Family's financial projections, Plaintiff argues that the Registration Documents do not "provid[e] any information that would permit reconciliation of" the non-GAAP[4] metrics utilized in the Registration Statement with actual GAAP metrics. The two non-GAAP financial projection equations at issue are:

(1) Adjusted EBITDA less non-controlling interest, commonly referred to as "Adjusted EBITDA – (NCI);" and

(2) Adjusted EBITDA less NCI plus stock-based compensation, commonly referred to as "Adjusted EBITDA – (NCI) + (SBC)." [*Id.*]

Essentially, Plaintiff argues that Almost Family was required to include, alongside these non-GAAP metrics, corresponding GAAP metrics to reconcile the former projections.

---

[4] "GAAP" is the acronym used to refer to the phrase "Generally Accepted Accounting Principles."

6

With respect to the financial analysis conducted by Guggenheim on behalf of Almost Family, Plaintiff argues that the Registration Documents omit "material information" from Guggenheim's undertaking. [*Id.* at 15.] More specifically, Plaintiff notes that "the Registration [Documents] fail[] to disclose material information regarding Guggenheim's *Discounted Cash Flow Analysis* ('DCF') valuations of both Almost Family and LHC." [*Id.*] Plaintiff goes on: "[w]ith respect to Guggenheim's DCF Analysis for both [companies]…, the Registration [Documents] state[] that Guggenheim based its [DCF Analysis] on each company's respective after-tax unlevered free cash flows ('UFCF') as referenced in the 'five-year financial projections'" provided to it by both Almost Family and LHC. [*Id.* at 15-16.] However, "the Registration [Documents]…fail[] to disclose the actual projected values of UFCF or the values of the line items utilized to calculate UFCF." [*Id.* at 16.]

It is Plaintiff's position that the omissions of the reconciling GAAP metrics contravenes Regulation G, thereby mandating the imposition of an injunction until such time as Almost Family rectifies the issue and, further, that all of the above-described omissions were material, and therefore worthy of a preliminary injunction in order to prevent the shareholder vote scheduled to take place on March 29, 2018. [DN 48, at 7.] At that time, shareholders will vote on whether to merge Almost Family into LHC, a transaction allegedly valued at around $2.4 billion. [*Id.*]

### A. Likelihood of Success on the Merits

The first factor of the analysis inquires after Plaintiff's likelihood of success on the merits of the instant lawsuit. *See Norfolk S. Corp.*, 927 F. 2d at 903. The Sixth Circuit has made clear that, while the four-factor standard for a preliminary injunction requires balancing by the courts, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v.*

7

*Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citations omitted). Therefore, this Court gives considerable weight to this first factor. *See Shrink Missouri Gov. PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) ("The most important of the…factors is the [plaintiff's] likelihood of success on the merits."). Here, the Court also makes specific note of the inversely proportional relationship between this first factor and the second factor, which asks if an injunction will save the movant from irreparable injury. *See Norfolk S. Corp.*, 927 F. 2d at 903. This is to say, the stronger the showing on prong one, the less a movant need show on prong two, and vice versa. *See Blackwell*, 467 F.3d at 1009 (citations omitted).

As explained above, Plaintiff's dispute with Almost Family's disclosures lies, in the broader sense, in two places. The first is Plaintiff's contention that the Registration Documents were subject to Regulation G, and Almost Family's failure to disclose GAAP metrics to reconcile the non-GAAP metrics contravened that Regulation. Second, Plaintiff contends that the non-GAAP metrics were rendered materially misleading by Almost Family's failure to include reconciling GAAP metrics therein alongside their non-GAAP counterparts and, further, that the information Almost Family failed to disclose regarding its DCF analysis and UFCF was material as well.

**1. Regulation G**

Title 17 C.F.R. § 244, also referred to as Regulation G, provides the general rules regarding the disclosure of non-GAAP financial metrics and their GAAP counterparts. The parties' difference in opinion in this case is with respect to whether the information contained in the Registration Documents were subject to Regulation G. Regulation G provides that "[w]henever a registrant, or person acting on its behalf, publicly discloses material information that includes a non-GAAP financial measure, the registrant must accompany that non-GAAP

financial measure with: (1) [a] presentation of the most directly comparable financial measure calculated and presented in accordance with [GAAP]; and (2) [a] reconciliation…." Plaintiff contends that this section of Regulation G applies to Almost Family and that, consequently, the company was *required* to include GAAP reconciliations in the Registration Documents alongside the non-GAAP metrics outlined above. Conversely, Almost Family contends that this situation is covered by the exemption found in 17 C.F.R. § 244.100(d), which provides that "[t]his section shall not apply to a non-GAAP financial measure included in disclosure relating to a proposed business combination…if the disclosure is contained in a communication that is subject to…§ 229.1015 of this chapter." 17 C.F.R. § 224.100(d). Relatedly, § 229.1015, also referred to as Item 1015 of Regulation M-A, governs disclosures related to mergers.

After an examination of the arguments of both sides, as well as the lengthy exhibits attached to the filings with the Court, the Court finds that, while Plaintiff has "raise[d] a right to relief beyond the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), he has not presented a *strong* likelihood of success on the merits. *See Overstreet*, 305 F.3d at 573 (explicitly noting that the ultimate question under this prong is "whether the movant has shown a *strong* likelihood of success on the merits….") (emphasis added).

Plaintiff cites to SEC Complaint and Disclosure Interpretation (C&DI) 101.02, which provides that the exemption from Regulation G and Item 10(e) of Regulation S-K does not "extend to the same non-GAAP financial measures disclosed in registration statements, proxy statements and tender offer statements." However, Almost Family relies upon the previous C&DI, 101.01, which notes that "financial measures included in forecasts provided to a financial advisor and used in connection with a business combination transaction [are not considered] non-GAAP financial measures." Almost Family also contends that it meets the two requirements in

SEC C&DI 101.01: first, the financial measures at issue were "included in forecasts provided to [its] financial advisor [Guggenheim] for the purpose of rendering an opinion that [was] materially related to the" merger with LHC; and second, that "the forecasts [were] being disclosed in order to comply with Item 1015 of Regulation M-A…regarding disclosure of the financial advisor's analyses or substantive work." Both arguments hold considerable weight, and the Court finds it far from certain that Plaintiff has demonstrated a "strong likelihood of success on the merits" of his claim that Almost Family was not exempted from compliance with Regulation G, which would mandate disclosure of the reconciling GAAP metrics.

Indeed, in Almost Family's Amended Registration Statement, it explicitly states the following:

> The Almost Family financial projections were provided to, and reviewed and approved by, the Almost Family board of directors **and provided to (i) Almost Family's financial advisor for its use and reliance in connection with its financial analyses and opinion**…and (ii) to the LHC board of directors and to LHC's financial advisor for its use and reliance in connection with its financial analyses and opinion….
>
> The Almost Family financial projections are summarized in this joint proxy statement prospectus solely to give stockholders access to information that was made available to Almost Family's board of directors and financial advisor and to LHC and its financial advisor in connection with their respective evaluations of the merger, and are **not included in this joint proxy statement/prospectus in order to influence any Almost Family stockholder or LHC stockholder to make any investment or voting decision with respect to the merger.**
>
> The Almost Family financial projections were prepared solely for internal use and are subjective in many respects….**The inclusion of a summary of the Almost Family financial projections in this joint proxy statement/prospectus should not be regarded as an indication that any of Almost Family, LHC, or their respective financial advisors or any other person considered, or now considers, this information to be necessarily predictive of actual future results or events, and it should not be relied upon as such….**
>
> The inclusion of a summary of the Almost Family financial projections herein **should not be deemed an admission or representation by Almost**

> **Family or LHC that such financial projections are viewed by Almost Family or LHC as material information of Almost Family, and in fact, neither Almost Family nor LHC views the Almost Family financial projections as material** because of the inherent risks and uncertainties associated with such long-term projections.

[DN 48-5, at 116-17 (emphasis added).] This language indicates that the non-GAAP metrics are not, in the company's view, material, that they were provided to Guggenheim solely for the purpose of conducting its analysis and issuing its fairness opinion, and that the numbers are not included to influence voting or to indicate which way shareholders should vote. [*Id.*] Thus, while Plaintiff's argument that the general rule under Regulation G applies, Almost Family has included specific language in its Registration Documents indicating that, under the circumstances, they should fall under the exemption in 17 C.F.R. 244.100(d). In short, Plaintiff has not demonstrated a strong likelihood of success on his Regulation G argument.

### 2. Plaintiff's Materiality Argument

Plaintiff also argues that the GAAP metrics and the values of the line items utilized to calculate UFCF were "material" and, consequently, Almost Family's failure to include these items in the Registration Documents rendered the non-GAAP metrics and the UFCF-related figures "materially misleading." Rule 14a-9 "prohibits the inclusion in a proxy statement of 'any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) (quoting 17 C.F.R. § 240.14a-9). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus.*, 426 U.S. at 449.

Importantly, the standard "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote," but rather, "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

Here, the explicit language, block-quoted above, which states unequivocally that Almost Family does not consider the non-GAAP metrics to be material due to the inherent risks and uncertainties that come along with such figures, seems to undercut Plaintiff's argument or, at the very least diminish, his likelihood of success on the merits of this argument. Where the company itself disclaims the materiality of such metrics before actually disseminating the relevant voting materials to its shareholders, it is a speculative argument that contends the terms are still materially misleading under *TSC Indus.*, 426 U.S. at 449. This is because, before something may be materially misleading, it must itself first be a material term. And although Almost Family's claim in the Registration Documents that the non-GAAP metrics were not "material" is likely not dispositive in and of itself, it certainly tips the scales more in favor of the company.

In its Response to the instant Motion, Almost Family claims that Plaintiff does not actually point to any material statement that has been rendered misleading by the omission of the GAAP metrics, but the Court makes note of the fact that Plaintiff's contention is that the non-GAAP metrics have themselves been rendered materially misleading due to the omission of the reconciling GAAP metrics. More specifically, Plaintiff has set forth the argument that the non-GAAP metrics are presented in an inconsistent manner, and are in that way materially

12

misleading. *See* SEC C&DI 100.01-.03. Irrespective of this Court's discussion above regarding Almost Family's express disclaimer of non-materiality, the Court does not find this argument to be dispositive either. The sets of Adjusted EBITDA cited to by Plaintiff on page nine of his Reply are historical in nature (2015, 2016, and 2017, respectively). [*See* DN 51, at 14.] Plaintiff also refers to an October 2017 Press Release wherein Almost Family apparently referred to the data simply as "EBITDA." [*Id.*] This, too, falls short of presenting Plaintiff's argument as one with a "strong" likelihood of success on the merits of the argument that the non-GAAP metrics are inconsistent to the point of presenting a materially misleading term in the Registration Documents.

Plaintiff also contends that the failure of Almost Family to disclose in the Registration Documents the projected values of UFCF or the values of the line items utilized to calculate UFCF constitute a materially misleading omissions. But whereas Plaintiff has contended that the non-GAAP metrics were rendered materially misleading by virtue of the fact that the figures were not reconciled with GAAP metrics, the Court is unsure what specific "statement" in the Registration Documents was rendered "materially misleading" due to the omission of the projected values of UFCF and the identified line items. To be sure though, in his Reply, Plaintiff does point generally to the "Board's recommendation" and "Guggenheim's discounted cash flow analysis." [DN 51, at 16.] Essentially, Plaintiff appears to argue that the exclusion of the projected values of UFCF and the identified line items rendered the entire recommendation of Almost Family's Board of Directors materially misleading, as well as the entirety of Guggenheim's DCF analysis. Even setting aside the broad brush with which Plaintiff paints at this juncture, the Court is still not convinced that he has shown that the complained-of figures are material or, relatedly, that the entire recommendation has been rendered materially misleading as

a result of the identified exclusions. Simply put, nothing in Plaintiff's argument concerning inconsistencies and/or omissions leads this Court to conclude that he possesses a strong likelihood of success on the merits of (1) showing the materiality of the non-GAAP or GAAP metrics, or the UFCF figures, and (2) showing that such "material" terms were misleading.

Here, the Court notes that counsel for Plaintiff makes most of his legal statements or arguments with no expert support that anything argued is "materially misleading," as defined and explained above. Consistent with the inversely proportional relationship between the first and second prongs, Plaintiff's failure to show a strong likelihood of success on the merits means that, in order to succeed on the instant Motion, he must present a stronger argument under prong two.

### B. Irreparable Injury

The second factor for analysis presents the question of "whether the injunction will save…[P]laintiff from irreparable injury." *See Norfolk S. Corp.*, 927 F. 2d at 903. The irreparable injury requirement is a significant, and possibly determinative, factor in whether a court may grant a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). "[T]he harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). In other words, the injury alleged by the plaintiff must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

In the first instance, Plaintiff argues that "[t]he failure to disclose all material information has long been recognized as constituting irreparable harm, especially in the context of a merger such as this." [DN 4, at 17.] Plaintiff goes on to argue that "[t][he omitted information identified in the Complaint and discussed here is material to shareholders in rendering a decision regarding

a proposed merger and the failure to disclose this information cannot be remedied through a monetary damages claim after the consummation of the merger." [*Id.* at 17-18.]

In response, Almost Family makes four arguments: (1) Plaintiff's delay in bringing the instant Motion indicates that he will not suffer irreparable injury if the merger occurs, (2) there is no rule that the threat of an uninformed stockholder vote constitutes irreparable harm *per se*, (3) Plaintiff cannot establish that monetary damages would be inadequate, and (4) any potential harm is simply speculative and, as such, falls below the threshold necessary for this Court to issue a preliminary injunction.

Plaintiff concedes that, pursuant to *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), there is no *per se* rule that a shareholder suffers irreparable harm based upon an uninformed shareholder vote on an issue such as a merger, but argues that "shareholders have an enforceable right to cast an informed vote on complex corporate transactions that cannot be undone, which right is not compensable through continued litigation for potential unspecified monetary recovery." [DN 51, at 17-18 (collecting cases).] He argues further that "Sixth Circuit authority favors equitable relief in [the] form of an injunction when a claimed harm is not 'fully compensable' or otherwise not easily determined." [*Id.* (citing *Anderson v. Kentucky One Health, Inc.*, No. 3:17-cv-359, 2017 WL 4102484 (W.D. Ky. Sept. 15, 2017)).] And because "the Court cannot determine at this stage that Plaintiff's harm is 'fully compensable by monetary damages' as the monetary value of making an informed decision…is both difficult to calculate and speculative," the Court should halt the merger. [DN 51, at 19 (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007)).]

However, it does not automatically follow from Plaintiff's argument that the extraordinary relief of a preliminary injunction should be granted. The specific question under

the second prong of the preliminary injunction analysis is whether "the harm alleged…[is] both certain and great," or whether it is merely "speculative or theoretical." *State of Ohio ex rel. Celebrezze*, 812 F.2d at 290. The Court agrees that the Sixth Circuit favors equitable relief in the form of an injunction where the "claimed harm is not fully compensable or otherwise not easily determined," [DN 51, at 17-18], but this, too, does not move Plaintiff's harm from the theoretical realm and into realm of certainty. Further, the focus regarding whether Plaintiff's hypothetical damages would be fully compensable should not be on the shareholder's decision itself but, rather, on the damages flowing from casting an uninformed vote. In other words, Plaintiff's argument is that it would be nearly impossible to gauge the accurate level of monetary value of being able to make an informed decision in casting a shareholder vote. But the ultimate damages Plaintiff would be seeking in a case like this after a merger went through would be the wrongful undervaluation of the stock at issue, if there was one. Consequently, the Court cannot say that the scales tip in favor of Plaintiff here either. To be sure, shareholders have a right to cast an informed vote, but the question at issue on this Motion is whether Plaintiff has shown that there is a danger of irreparable harm that is "certain and great," and that he simply has not done.

Almost Family cites to *Louisiana Mun. Police Emps.' Ret. Sys. v. Cont'l Res., Inc.*, 886 F. Supp.2d 1255 (W.D. Okla. 2012). There, the District Court for the Western District of Oklahoma stated the following:

> Plaintiff's argument that it will be irreparably harmed if the…shareholder vote is not enjoined rests on the assumption that the shareholders will approve the acquisition. Of course, that result cannot be predicted with certainty at this point in time. In any event, Plaintiff's assertion of irreparable harm also rests on the contention that the acquisition will be detrimental to the shareholders…, an assertion that is not clearly supported by the evidence before the Court. Accordingly, any harm that the Plaintiff contends would result from the failure to enjoin the vote is merely speculative and cannot support the extraordinary remedy of a preliminary injunction.

*Id.* at 1267-68. Likewise, in this case, Plaintiff has contended that irreparable harm will result if the merger vote regarding Almost Family and LHC is not preliminarily enjoined by this Court, which presupposes that the merger will be approved. Additionally, the entire premise of Plaintiff's lawsuit appears to depend on the notion that the merger will inevitably result in an undervaluation of Almost Family stock and, consequently, an unfavorable premium being placed on Almost Family stock after the merger is effectuated. There is no direct evidence before the Court which tends to support that contention.

Indeed, Plaintiff's argument regarding the nondisclosure of the GAAP metrics in the Registration Documents appears to indicate that these numbers could potentially hold the key to this hypothetical undervaluation of Almost Family stock. This, in the Court's view, is insufficient to warrant its granting of the extraordinary remedy of a preliminary injunction. Plaintiff's complained-of harm remains speculative at this stage and is far from "certain and great." *State of Ohio ex rel. Celebrezze*, 812 F.2d at 290. Finally, pursuant to the inversely proportional relationship inherent between the first and second prongs or, as Plaintiff has referred to it, the "sliding scale" approach to the preliminary injunction analysis, the Court notes that Plaintiff has failed to adduce sufficiently supported legal arguments on either of the first two prongs to tip the scales back in his favor. This is to say that each of the first two factors weigh, even if only slightly, in favor of Defendants, or at the very least *not* in favor of Plaintiff, thereby rendering the sliding scale of no help to Plaintiff here.

### C. Harm to Others & The Public Interest

The Court will analyze the third and fourth factors together. The third factor for analysis presents the question of "whether the injunction would harm others," and the fourth factor asks "whether the public interest would be served" by this Court's granting of a preliminary

17

injunction. *See Norfolk Southern Corp.*, 927 F. 2d at 903. Defendants cite to a decision of this Court's sister court in the Southern District of Ohio: *Unicorp Fin. Corp. v. First Union Real Estate Equity and Mortg. Inv.*, 515 F. Supp. 249, 263 (S.D. Ohio 1981), for support. There, the District Court, in examining this third preliminary injunction factor, stated as follows:

> The risk of an erroneous issuance of an injunction under such circumstances must be weighed against the harm, itself perhaps irreparable, the injunction may cause the parties enjoined. There exists the danger that shareholders may view an injunction inaccurately as a final determination of wrongdoing on the part of First Union and influence the election in this way. *See, e.g., Jewelcor, Inc. v. Pearlman*, 397 F. Supp. 221 (S.D.N.Y. 1975); *Sherman v. Posner*, 266 F. Supp. 871, 874 (S.D.N.Y. 1996). The equities do not warrant undertaking such a risk here.

This Court is cognizant of the fact that, should an injunction be granted, a knot could be thrown into the proposed $2.4 billion merger between Almost Family and LHC; negative financial consequences could result on both sides to both sets of shareholders; also, the deal could simply fall apart altogether. Conversely though, the financial consequences could be slight. Certainly, the mere prospect of negative financial consequences does not, and cannot, impede a judicious decision from this Court regarding whether to issue an injunction or not, but the harm to Almost Family and LHC shareholders is something the Court must consider in weighing the four preliminary injunction factors.

      Plaintiff's key argument concerning the perceived lack of harm he feels would befall Defendants is premised upon the notion that Defendants "will issue an amendment to the Proxy, likely on the same day of the Court's order. In other words, Defendants will correct the Proxy one week prior to the March 29 Shareholder Vote and no adjournment of the vote will be needed." [DN 51, at 20.] However, Plaintiff does not provide evidence or documents tending to show that the calculations he seeks (the GAAP reconciliations and the UFCF line item numbers) have already been put together by Almost Family, LHC, or Guggenheim, or that the disclosure of

such figures would be as simple and as easy as he suggests. Indeed, at the hearing in this matter, counsel for Almost Family stated the following: Plaintiff

> has posited that some, all—I'm not sure if it's some or all that what he wants disclosed is in our possession, but it's clear, I think, from his presentation that much of what he wants disclosed has to be created. It doesn't exist…I do think it's not prudent for us all to assume that this meeting is going to happen on the 29th if this motion is granted.

[DN 52, at 54-55.] Thus, in the Court's view, there remains a great deal of uncertainty regarding (1) if these calculations exist, (2) the ease with which Almost Family, LHC, or Guggenheim could produce them, and (3) whether they could be produced without altering or cancelling the shareholder vote scheduled for March 29, 2018.

Almost Family also cites to a District Court case from the District of Minnesota for support concerning these last two factors: *Erickson v. Hutchinson Tech. Inc.*, 158 F. Supp.3d 751, 763 (D. Minn. 2016). There, the District Court noted that "keeping shareholders from realizing a premium on their shares outweighs allegations of harm from uninformed votes," and that "a delay could jeopardize the transaction itself…." *Id.* And, relating to the public interest factor, the District Court stated that, while "[t]he public interest supports informed voting…[,] the public interest is not served by enjoining a premium generating transaction" and that "the public interest would not be furthered by requiring disclosure of the non-material omitted information." *Id.* Instead, in that case, the district court found that "enjoining the shareholder vote [would] upset[] the corporate governance model and threaten[] to harm shareholders who stand to realize a substantial premium on their shares. The public interest would not be furthered by granting a preliminary injunction under these circumstances." *Id.* at 763-64.

This language closely tracks the issues of this case. To be sure, this Court has made no definitive finding concerning the materiality of the omitted information. Instead, this Court

merely noted that Plaintiff has not adduced evidence tending to show he has a strong likelihood of success on the merits of his Regulation G and "materiality" arguments. That, coupled with the speculative nature of the harms he alleges he will suffer, the harm likely to befall Almost Family, LHC and their respective shareholders if this Court enjoins a premium generating merger, and the lack of public interest to be served by an injunction, leads this Court to the conclusion that an injunction should not be granted. The Court notes that no witnesses testified at the hearing and, excepting an affidavit of Plaintiff's counsel, no evidentiary affidavits were filed. In essence, the argument of counsel is based on the wording of the various documents. Other than this argument, there is little for the Court to hang its hat on in determining "materiality" apart from the opinion of counsel. Certainly, there was no expert testimony to support Plaintiff's argument at the hearing or in the filings. Consequently, Plaintiff's Motion [DN 3] must be denied.

## IV. Conclusion

For the reasons stated in this Memorandum Opinion & Order, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Preliminary Injunction, [DN 3], is **DENIED.**

**IT IS SO ORDERED.**

cc: Counsel of Record